United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMILA BEHASHTI, | No. C-09-1676 JCS |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **[Docket Nos. 11, 12]** |
| Defendant. | |
| _____/ | |

## I.    INTRODUCTION

Plaintiff Jamila Behashti ("Behashti") applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on March 22, 2006. The application was denied both initially and on reconsideration. A hearing was then held on September 4, 2008, with Administrative Law Judge ("ALJ") Thomas J. Gaye presiding. In a decision dated September 29, 2008, the ALJ denied the claim, concluding that Behashti was not disabled because she remains capable of performing her past relevant work as a retail cashier. The ALJ's denial became the final decision of the Commissioner when the Appeals Council denied Behashti's subsequent request for review on February 2, 2009. Behashti then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Behashti asks the Court to reverse the Commissioner's decision and remand the case for further proceedings on the grounds that the denial was neither supported by substantial evidence, nor was it free of legal error.

Behashti filed a motion for summary judgment ("Behashti's Motion") (Docket No. 11), and the Commissioner filed an opposition to Behashti's Motion and a cross-motion for summary judgment ("Commissioner's Motion") (Docket No. 12). The parties have consented to the

**United States District Court**
For the Northern District of California

1  jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  Docket No. 6.  For the reasons

2  stated below, the Commissioner's Motion is GRANTED and Behashti's Motion is DENIED.

## II.      BACKGROUND

### A.      Behashti's Background

Behashti was born on August 1, 1952.  Administrative Record ("AR") at 33.  She was 48

years old as of October 1, 2000, the alleged onset date of her disability.  *Id.* at 96.  Behashti

graduated from high school in Afghanistan and moved to the United States in 1981.  *Id.* at 34.

Behashti has worked at several places of employment since 1981 with her relevant past work

consisting of employment as a cashier at the retail store T.J.Maxx from 1995 to 2000.  *Id.* at 35-36,

41-42, 103-04.

### B.      The Administrative Hearing

The ALJ held an administrative hearing on Behashti's claims for disability insurance benefits

on September 4, 2008.  *Id.* at 26.  Both Behashti and a vocational expert ("VE") appeared and

testified.  *Id.* at 26-44.  Attorney Tony Arjo represented Behashti.  *Id.* at 26.

At the hearing, when the ALJ asked Behashti why she could not work any longer, Behashti

stated, "I'm sick and depressed" and "I don't have anybody here."  *Id.* at 36.  Specifically, Behashti

testified that her back, legs and depression prevent her from working.  *Id.* at 37.  However, Behashti

indicated that she takes aspirin and other medications for her health concerns and stated that

"gradually they help" and she "[is] very happy."  *Id.* at 37, 39.  Behashti also testified that in spite of

her back and leg problems, she does not have problems standing and she can walk without pain for

twenty or thirty minutes.  *Id.* at 39, 41.  Behashti does not use a cane, but she must be accompanied

by someone when walking, according to her testimony.  *Id.* at 41.  As for her depression, Behashti

stated that she feels depressed daily because she does not have "any home to live in," is far away

from her daughter and is affected by the "revolution in Afghanistan."  *Id.* at 39-40.  Behashti added

that she does not have problems sleeping, but she is "scared of [her] husband" and her husband's

children tease her.  *Id.* at 40.  In response to an inquiry by the ALJ as to whether she is "able to read

English at all," Behashti stated, "No writing, no reading, but talking."  *Id.*

The VE also testified at the hearing.  *Id.* at 41-42.  The ALJ asked the VE the hypothetical

United States District Court

For the Northern District of California

1  question of whether "a person of claimant's age, education and past work experience at the light

2  exertional level" who is limited to "simple, repetitive tasks" could return to performing Behashti's

3  past relevant work as a retail cashier. *Id.* at 41.  The VE answered affirmatively. *Id.*  Behashti's

4  attorney questioned the VE about Behashti's English language limitations, asking whether illiteracy

5  and limited spoken English would be a problem with the retail cashier job. *Id.* at 42.  The VE

6  answered that it would not be a problem and had not been a problem for the five years Behashti

7  actually performed the work. *Id.*  The VE also testified that as Behashti had previously performed

8  retail cashier work with those language limitations, she "could survive [as a] cashier in places other

9  than T. J. Maxx, based on [his] experience." *Id.*

10       **C.      The ALJ's Five-Step Analysis**

11       Disability insurance benefits are available under the Social Security Act when an eligible

12  claimant is unable "to engage in any substantial gainful activity by reason of any medically

13  determinable physical or mental impairment . . . which has lasted or can be expected to last for a

14  continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006); *see also* 42 U.S.C.

15  § 423(a)(1) (2006).  A claimant is only found to be disabled if his physical or mental impairments

16  are of such severity that not only is he unable to do his previous work, he also "cannot, considering

17  his age, education, and work experience, engage in any other kind of substantial gainful work which

18  exists in the national economy." 42 U.S.C. § 4239(d)(2)(A) (2006).  The claimant bears the burden

19  of proof in establishing a disability. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), *cert.*

20  *denied*, 519 U.S. 881 (1996).

21       The Commissioner utilizes a sequential, five-part evaluation process to determine whether a

22  claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a).  At Step One, the

23  Commissioner considers whether the claimant is engaged in "substantial gainful activity." *Id.* §

24  404.1520(a)(4)(i).  If the claimant is so engaged, the Commissioner finds the claimant not disabled

25  and ends the evaluation. *Id.*  If the claimant is not so engaged, the Commissioner proceeds to Step

26  Two. *See id.*

27       At Step Two, the Commissioner considers whether the claimant has "a severe medically

28  determinable physical or mental impairment," or combination of such impairments, which meets the

3

duration requirement in 20 C.F.R. § 404.1509. *Id.* § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). In addition, the physical or mental impairment (or combination of impairments) must have lasted, or must be expected to last, for a continuous period of 12 months. *Id.* § 404.1520(a)(4)(ii); *id.* § 404.1509 (stating the duration requirement that unless a claimant's "impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months"). Age, education, and work experience are not considered at this step. *Id.* § 404.1520(c). If the claimant does not have such an impairment, the Commissioner finds the claimant not disabled and ends the evaluation. *Id.* § 404.1520(a)(4)(ii). If the claimant has such an impairment, the Commissioner proceeds to Step Three. *See id.*

At Step Three, the Commissioner considers whether the claimant's impairment "meets or equals" one of the Social Security Administration's compiled listings of impairments that the Commissioner has established as disabling. *Id.* § 404.1520(a)(4)(iii). If the claimant's impairment meets one of the listed impairments, the Commissioner finds the claimant disabled. *Id.* If the claimant's impairment does not meet one of the listed impairments, the Commissioner proceeds to Step Four. *See id.*

At Step Four, the Commissioner considers whether the claimant, in light of his or her residual functional capacity, can continue to perform work he has performed in the past. *Id.* § 404.1520(a)(4)(iv). Based on the relevant medical evidence and other evidence in the record, the Commissioner assesses the claimant's residual functional capacity to determine whether the claimant can do his past work. *Id.* § 404.125(e). If the residual functional capacity assessment determines the claimant can perform his or her past work, the Commissioner will find the claimant not disabled. *Id.* § 404.1520(f). If the residual functional capacity assessment determines that the claimant cannot perform his past work, the Commissioner proceeds to Step Five. *See id.*

At Step Five, the Commissioner considers the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant can "make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, the Commissioner finds him not disabled. *Id.* If the claimant cannot make an adjustment to other work,

the Commissioner finds him disabled. *Id.* At Step Five, the burden shifts to the Commissioner to show (1) that the claimant, in light of his or her impairments, age, education, and work experience, can adjust to other work in the national economy and (2) that such a job actually exists. *See Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995).

### D.      The ALJ's Findings of Fact

In this case, the ALJ found at Step One of the evaluation process that Behashti had not engaged in any substantial gainful activity since the alleged disability onset date of October 1, 2000. AR at 12.

At Step Two, the ALJ found that the medical evidence establishes that Behashti "has the . . . severe impairments [of] low back pain and depression." *Id.*

At Step Three, the ALJ found that Behashti does not have an "impairment or combination of impairments that meets or medically equals one of the . . . impairments" listed in the pertinent CFR section. *Id.* at 13.

At Step Four, the ALJ found that, "[a]fter careful consideration of the entire record," Behashti "has the residual functional capacity to perform light work" as defined in the pertinent CFR sections. *Id.* at 14. The ALJ also determined that while Behashti possesses "moderate limitations" in terms of "the ability to understand, remember and carry out detailed tasks," Behashti retains the "ability to sustain simple and repetitive tasks." *Id.*

In reaching this finding, the ALJ "considered all symptoms and the extent to which the[] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ "also considered opinion evidence," according "significant weight" to opinions by the consulting internist and psychiatrist "because they actually examined" Behashti. *Id.* at 14-15. Upon review of this evidence, the ALJ found that Behashti's "medically determinable impairments could reasonably be expected to produced the alleged symptoms." *Id.* at 15. However, the ALJ concluded that Behashti's "symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment." *Id.* The ALJ explained that the "weight of the objective evidence does not support [Behashti's] claims of disabling limitations to the degree alleged." *Id.*

United States District Court

For the Northern District of California

Specifically, the ALJ noted that the medical evidence (1) failed to show "abnormalities of gait[,] restriction in back motion or significant neurological deficits" and (2) indicated merely mild "limitation of motion" and "degenerative changes" in the lumbar spine. *Id.* The ALJ pointed to Behashti's admission that over-the-counter aspirin helps to "gradually" relieve the pain. *Id.* The ALJ noted that the psychiatric records indicated that Behashti "enjoys watching TV, talks to some people, walks around her place and will do some cooking and household chores." *Id.* Behashti also "told her treating doctor that the depression was not too bad," the ALJ noted. *Id.*

Based on this analysis, the ALJ concluded the following: Behashti is "capable of performing past relevant work as a cashier," because such work "does not require the performance of work related activities precluded by" Behashti's residual functional capacity. *Id.* The ALJ found that, factoring in Behashti's residual functional capacity and the "physical and mental demands of th[e] work," Behashti is able to perform the "actual functional demands and job duties" of a cashier. *Id.* The ALJ expressly deemed the VE's testimony "consistent with the information contained in the [*DOT*]." *Id.* Ultimately, the ALJ concluded that Behashti "has not been under a disability, as defined in the Social Security Act," from the onset date of October 1, 2000 to the September 29, 2008 date of the ALJ's decision. *Id.*

### E.    Contentions of the Parties

Behashti argues that the ALJ erred in relying on the VE's testimony that Behashti could still perform the work of a retail cashier, despite her limitations with English. Behashti's Motion at 5. This testimony is inconsistent with the description of the job of cashier in the *Dictionary of Occupational Titles*' ("*DOT*"), Behashti claims. *Id.* Specifically, Behashti contends that the *DOT* indicates that the job of cashier requires an English language development level sufficient to read simple works, write compound sentences, and speak clearly and distinctly with some measure of sophistication. *Id.* at 5-6. Behashti claims that this requirement "clearly contradicts the VE's testimony that a person illiterate in English and with limited spoken English could perform the work of a cashier." *Id.* at 6. Behashti also points out that the ALJ found that Behashti's medical condition moderately limits her ability to carry out detailed tasks, and Behashti contends that "[c]ommunicating with customers in a non-native language would be considered a detailed task."

**United States District Court**
For the Northern District of California

1  *Id.* at 5.  Therefore, Behashti argues that Social Security Ruling ("SSR") 00-4p required the ALJ to

2  "obtain a reasonable explanation for the apparent conflict."  *Id.* at 6.  The ALJ failed to do so.  *Id.*

3  Moreover, Behashti claims that the absence of an explanation is material because Behashti's alleged

4  inability to perform the work of a cashier would require that the case proceed to the fifth step in the

5  sequential evaluation.  *Id.*  At such a stage, Behashti argues, her vocational profile (including age,

6  allegedly poor English skills and purportedly limited residual functional capacity) would support a

7  disability finding.  *Id.*  Behashti contends that the ALJ committed legal error by failing to comply

8  with SSR 00-4p, and asks the Court to reverse the Commissioner's decision.  *Id.*

9        The Commissioner responds that substantial evidence supports the ALJ's decision and that

10  the ALJ applied proper legal standards such that the ALJ's decision is free of reversible error.

11  Commissioner's Motion at 2.  The ALJ properly found that Behashti remained capable of

12  performing past relevant work as a retail cashier as actually performed and Behashti did not

13  establish an inability to engage in the past relevant work at issue.  *Id.*  The Commissioner points out

14  that the burden of proof in the Step Four determination of whether Behashti can perform past

15  relevant work lies with Behashti as the claimant.  *Id.* at 2-3.  Accordingly, the ALJ need not rely on

16  VE testimony to arrive a Step Four decision.  *Id.*  Moreover, assessment of English literacy is not a

17  requisite aspect of evaluating a claimant's ability to perform past relevant work.  *Id.* at 3.  As such,

18  the Commissioner argues that the ALJ correctly based the past work determination on a medical

19  assessment of Behashti's residual functional capacity and on consideration of the physical and

20  mental demands of Behashti's past work.  *Id.*  Although the ALJ cited the VE's testimony as

21  supportive of the ALJ's finding and consistent with the *DOT*, the Commissioner contends that the

22  ALJ's decision did not – nor did it need to – take into account the VE's testimony or any language

23  or vocational considerations.  *Id.*  Therefore, the Commissioner argues that the proffered

24  inconsistencies between the VE's testimony and the *DOT* regarding the pertinent English language

25  requirements for retail cashier work are not relevant.  *Id.*

26

27

28

United States District Court

For the Northern District of California

1    **III.    ANALYSIS**

2    **A.    Legal Standard**

3    When reviewing the Commissioner's decision, the Court takes as conclusive any findings of

4    the Commissioner that are free from legal error and "supported by substantial evidence."  42 U.S.C.

5    § 405(g).  Substantial evidence is "such evidence as a reasonable mind accepts as adequate to

6    support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison*

7    *Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).  "Substantial evidence

8    means more than a mere scintilla, but less than a preponderance." *Desrosiers v. Sec'y of Health &*

9    *Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).

10   Even if the Commissioner's findings are supported by substantial evidence, they should be set aside

11   "if proper legal standards were not applied when using the evidence to reach a decision." *Benitez v.*

12   *Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (citation and internal quotation marks omitted).  In

13   reviewing the record, the Court must consider both "the evidence that supports and . . . detracts from

14   the Commissioner's conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

15   SSR 00-4p regulates how an ALJ may use occupational evidence in a disability

16   determination. *See* SSR 00-4p at *2-4.  Under the rule, when a VE testifies "about the requirements

17   of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible

18   conflict between" the VE's testimony and the "information provided in the [*DOT*]." *Id.* at *4.  SSR

19   00-4p specifically provides that the adjudicator "will ask" the VE "if the evidence he or she has

20   provided" is consistent with the *DOT* and "obtain a reasonable explanation for [any] apparent

21   conflict." *Id.*  The Ninth Circuit has explained that "[t]he procedural requirements of SSR 00-4p

22   ensure that the record is clear as to why an ALJ relied on a [VE's] testimony, particularly in cases

23   where the expert's testimony conflicts with the [*DOT*]." *Massachi v. Astrue*, 486 F.3d 1149, 1153

24   (9th Cir. 2007).  While testimony by a VE "generally should be consistent" with the *DOT*, the rule

25   expressly states that neither evidentiary source "automatically 'trumps' when there is a conflict."

26   SSR 00-4p at *2.  In *Massachi*, the Ninth Circuit held that SSR 00-4p mandates that an ALJ cannot

27   rely on VE testimony without inquiry into and explanation of any potential conflicts with the DOT.

28   486 F.3d at 1152.  Under *Massachi*, when a VE provides occupational testimony at a hearing, an

United States District Court

For the Northern District of California

ALJ is required to (1) "explicitly ask the VE if his testimony is consistent with occupational information found in the DOT" and (2) "ask the VE if there is a reasonable explanation for the VE's deviation," if any conflict exists. *Valenzuela v. Astrue*, No. C 08-04001 WHA, 2009 Wl 1537876, at *3 (N.D. Cal. June 2, 2009). "If the ALJ [does] not make this inquiry, he fail[s] in his affirmative responsibility to 'ensure that the record is clear as to why an ALJ relied on a [VE's] testimony.'" *Id.* (quoting *Massachi*, 486 F.3d at 1152). However, such a failure of inquiry is not by itself cause to reverse the ALJ's decision. The ALJ's "procedural error" is "harmless" if no conflict existed or if the VE "provide[s] sufficient support for [the ALJ's] conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1154 n.19; *see, e.g., Sebben v. Astrue*, No. 1:08cv01768 GSA, 2010 WL 347978, at *21 (E.D. Cal. Jan. 29, 2010) (finding the ALJ's procedural error harmless based on the sufficiency of the VE's testimony); *Vierra v. Astrue*, No. C 06–7785 PVT, 2008 WL 4449575, at *8 (N.D. Cal. Sept. 30, 2008) (same).

**B.    Application**

As a preliminary matter, it is not clear whether application of SSR 00-4p and *Massachi* is appropriate here. SSR 00-4p and *Massachi* both concern consistency between VE testimony regarding whether a claimant could perform other jobs in the national economy and the standards set forth for those jobs in the *DOT*. *See* SSR 00-4p at *2-4; *Massachi*, 486 F.3d at 1152-54. Such occupational evidence arises when considering whether a claimant is capable of adjusting to other work in the national economy and the ability of such work (Step Five), not when considering whether a claimant can continue to perform his or her past relevant work (Step Four). *See Massachi*, 486 F.3d at 1153-54 (reaching its conclusion regarding consistency between VE testimony and the job standards of the *DOT* in the Step-Five context of whether the claimant "could perform other work," not in the Step-Four context of whether the claimant could continue to perform his past relevant work); SSR 00-4p at *2 (noting that the Commissioner principally relies on the job

9

**United States District Court**

For the Northern District of California

1    standards of the *DOT* "for information about the requirements of work in the national economy,"

2    which is part of the Step-Five calculus).[1]

3         Here, the VE testimony at issue related to Behashti's linguistic fitness for performing her

4    past relevant work as a retail cashier.  *See* AR at 42.  In response to questioning by Behashti's

5    attorney, the VE testified that Behashti's illiteracy and limited spoken English would not be a

6    problem and had not been a problem for the five years Behashti actually performed the work.  *Id.*

7    (Behashti's attorney asking, "With the cashier job, would the illiteracy and the . . . limited spoken

8    English be a problem?" and the VE responding, "No, and it hasn't been for five years.").  This

9    testimony did not concern whether Behashti could adjust to performing another type of work in the

10   national economy or the standards for that work.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  The Ninth

11   Circuit has held that such considerations are not appropriate at Step Four.  *See Korenica v. Astrue*,

12   346 Fed. Appx. 141, 143 (9th Cir. 2009) (holding that "it is not appropriate to consider whether the

13   claimant's previous work exists in the national economy" at Step Four).  Therefore, it is unclear how

14   the job standards set forth in the *DOT* could be relevant to the VE's testimony at issue here or could

15   raise a question of evidentiary consistency at Step Four.

16        As a corollary, it is unclear whether the ALJ even considered – or, for that matter, should

17   have considered – Behashti's English language capacity at Step Four, given that it is independent of

18   the bases for her claimed disability and not necessarily relevant to the Step-Four consideration of her

19   ability to perform past relevant work.  *See Pinto v. Massanari*, 249 F.3d 840, 846 n.5 (9th Cir. 2001)

20   (noting the contradictory authorities on point and not reaching the question of whether consideration

21   of language skills ought to factor into Step Four).  The ALJ based his decision that Behashti is not

22   disabled on a determination that Behashti is capable of performing her past relevant work as a retail

23   cashier as such work "does not require the performance of work-related activities precluded by

24

25   _____

26        [1] Similarly, courts in this Circuit apply SSR 00-4p and *Massachi* in the Step-Five context of
     evaluating the consistency between VE testimony about the other jobs a claimant could perform and the
     *DOT*'s standards for those jobs.  *See, e.g., Marshall v. Astrue*, No. 08cv1735-L(WMc), 2010 WL
27   841252, at *5-6 (S.D. Cal. March 10, 2010); *Sample v. Astrue*, No. C 07-04814 JSW, 2009 WL 839298,
     at *5-7 (N.D. Cal. March 30, 2009); *Macapagal v. Astrue*, No. C07-03706 HRL, 2008 WL 4449580,
28   at *4-5 (N.D. Cal. Sept. 29, 2008); *Hernandez v. Astrue*, No. 2:07-CV-00828-PHX-GMS, 2008 WL
     4174889, at *2-4 (D. Ariz. Sept. 5, 2008).

United States District Court

For the Northern District of California

[Behashti's] residual functional capacity." AR at 15. While the VE testified that Behashti's illiteracy and limited spoken English had not prevented her from actually performing the work for the approximately five years she actually worked as a retailer cashier, nowhere does the ALJ's decision mention this particular testimony or discuss Behashti's linguistic qualifications for past relevant work.[2] *See id.* at 12-16.

Even if SSR 00-4p and *Massachi* apply here, the Court finds that any procedural error committed by the ALJ was harmless. Here, the ALJ concluded his decision with the statement that "[p]ursuant to SSR 00-4p, the [VE's] testimony [was] consistent with the information contained in the [*DOT*]." AR at 15. This statement notwithstanding, the ALJ failed to ask the VE whether his testimony regarding Behashti's English language capacity for continuing to perform past relevant work was consistent with the *DOT*'s description of the language requirements for that work (and, if so, whether the VE could reasonably explain the conflict). Even assuming that the ALJ's failure to inquire constituted procedural error, the Court finds that it was harmless. *See Massachi*, 486 F.3d at 1152. An ALJ's procedural error is harmless under *Massachi* if (1) there was no conflict or (2) the VE sufficiently supported his conclusion "so as to justify any potential conflicts." *See id.* at 1152-54 & 1154 n.19. As noted above, the VE testified that Behashti's English language limitations would not preclude her from continuing to performing her past relevant work as a retail cashier and that those limitations had not prevented her from performing such work in the past. *See* AR at 42. While the *DOT* describes retail cashier work as requiring more sophisticated English language abilities than Behashti's illiteracy and limited spoken English, the VE based his testimony that Behashti could continue to perform retail cashier work on the plain fact that, even with those linguistic limitations, Behashti had already performed such work for approximately five years. *See id.* (Behashti's attorney asking, "You're assuming because [Behashti performed the retail cashier work] before with her English that she could do it now?" and the VE responding, "I'm also saying that . . . she could survive the cashier [work] in places other than T. J. Maxx, based on my experience."). Therefore, even if SSR 00-4p and *Massachi* apply here, the VE's testimony

---

[2] The only mention of language in the decision is the factual statement that Behashti testified at the hearing that she "understands a little English, but cannot read or write in English." AR at 14.

**United States District Court**

For the Northern District of California

sufficiently supports the ALJ's conclusion that Behashti could continue to perform retail cashier work so as to justify any potential conflicts with the *DOT*.  Any error was therefore harmless.  *See Massachi*, 486 F.3d at 1154 n.19.

### IV.   CONCLUSION

For the reasons stated above, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  The Commissioner's Motion is GRANTED; Behashti's Motion is DENIED.

IT IS SO ORDERED.


Dated: May 19, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge